UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

LYNN POPE

v.                                                      C.A. No.      03-544

JOHN E. POTTER, Postmaster General of
the United States Postal Service

## MEMORANDUM AND ORDER

This matter is before the court on Defendant John E. Potter's ("Defendant") motion for

summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff Lynn

Pope ("Plaintiff") has filed suit alleging that, during her employment, the United States Postal

Service ("USPS") discriminated against her on the basis of gender and retaliated against her for

prior equal employment activity.  For the reasons stated below, Defendant's motion is granted.

### I.  SUMMARY JUDGMENT

Summary judgment is appropriate only if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if the pertinent evidence is such that a

rational fact finder could render a verdict in favor of either party and a fact is "material" if it has

the "capacity to sway the outcome of the litigation under the applicable law."  National

Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1ˢᵗ Cir.), cert. denied, 515 U.S. 1103

(1995).  The moving party bears the burden of making a preliminary showing that no genuine

issue of material fact exists.  Id.  Once the moving party has made this showing, the nonmoving

1

party "may not rest upon the mere allegations or denials" contained in the pleadings but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The trial court analyzes all facts and draws all inferences in a light that is most favorable to the nonmoving party. Reich v. John Alden Life Insurance Company, 126 F.3d 1 (1st Cir. 1997).

Local Rule 12.1 requires that the moving party file a "concise statement of all material facts as to which he contends there is no genuine issue necessary to be litigated." D.R.I. Loc. R. 12.1(a)(1). The nonmoving party must submit a similar statement identifying the facts "as to which he contends there is a genuine issue necessary to be litigated." D.R.I. Loc. R. 12.1(a)(2). The court may assume that the facts as claimed by the moving party exist unless they are disputed by affidavit or by other evidence that the court may consider pursuant to Rule 56 of the Federal Rules of Civil Procedure. D.R.I. Loc. R. 12.1(d).

## II. PROCEDURAL POSTURE

Plaintiff filed her complaint, pro se, on November 25, 2003. Plaintiff retained counsel in July 2004. Defendant filed the motion for summary judgment on September 29, 2004. Plaintiff filed two motions to enlarge time within which to file her opposition to Defendant's motion. The court granted both motions. As a result of the extensions granted by the court, Plaintiff was required to file her opposition to Defendant's motion by December 10, 2004. Plaintiff did not file her opposition until January 28, 2005. In addition to the late filing of her opposition, Plaintiff failed to comply with Local Rule 12.1, which requires a party opposing a motion for summary judgment to file a separate statement of facts she contends are in dispute.

During oral argument on the motion for summary judgment, Plaintiff offered no plausible explanation or excuse for her out-of-time filing. This court does not condone Plaintiff's

2

tardiness, however, in light of this circuit's strong policy of disposition on the merits, the court will consider Plaintiff's opposition memorandum as though it had been timely filed. See generally United States v. One 1987 BMW 325, 985 F.2d 655, 658 (1ˢᵗ Cir. 1993).

Plaintiff, however, does not fair as well with her failure to comply with Local Rule 12.1. As noted above, Plaintiff failed to file a Rule 12.1 statement. Those who fail to recognize the import of Rule 12.1 do so at their own risk. Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1ˢᵗ Cir. 2000). An attempt to dispute facts by merely incorporating them into a memorandum opposing a motion for summary judgment does not meet the requirements of the rule; a separate statement must be filed. Hazard v. Southern Union Co., 275 F. Supp. 2d 214, 222-23 (D.R.I. 2003). Plaintiff's failure to file a separate statement of disputed facts pursuant to Local Rule 12.1 results in this court adopting the facts provided by Defendant in his statement of undisputed facts. D.R.I. Loc. R. 12.1; see also Hazard, 275 F. Supp. 2d at 223. The court will analyze the questions of law accordingly.

### III. FACTS

Plaintiff began her employment with the USPS in the Westerly, Rhode Island, Post Office in October 1987. In December 1998 Plaintiff believed that her mail route was "overburdened" and submitted a request to her supervisor for a "special route inspection." Every postal route has what is referred to as an assessed delivery time. The assessed delivery time is the time that the USPS and the appropriate union have agreed is the time it takes to carry and deliver a particular postal route. The assessed delivery time is comprised of the "office" portion of the route (the time it takes the carrier to collect and sort the mail for the route) and the "street" portion of the route (the time it takes the carrier to deliver the mail on the route). A route which is assessed at

3

over eight hours is referred to as overburdened. In December 1998 the assessed street portion of Plaintiff's route was five hours and forty-five minutes.

The USPS' Operation Program Support Office in Providence, the office responsible for the route inspection, assigned a route inspection examiner for Plaintiff's route inspection. The examiner was required to observe Plaintiff while she worked and report back to a special route inspection coordinator. Prior to the route inspection, the Postmaster of the Westerly Post Office and another supervisor walked with letter carriers in the office, including Plaintiff, while they delivered their route. The Postmaster and supervisor walked with each carrier on several occasions for approximately one hour each time. The purpose of walking with each carrier was to develop a basic standard of performance in terms of the number of paces walked per minute for each carrier based upon his/her demonstrated ability. After the Postmaster and supervisor walked with a carrier on a number of occasions, the carrier was informed of what the expectation was for their future level of performance. This standard was used as a means to evaluate a carrier's performance on a daily basis. Plaintiff's demonstrated ability was 122 paces per minute. The Postmaster shared his observations concerning Plaintiff with Plaintiff's route examiner. The USPS's "Method's Handbook" provides that during a special route inspection a carrier is expected to walk at a pace in accordance with his/her demonstrated ability.

During one day of the inspection, the examiner aborted it because Plaintiff was not walking at her demonstrated ability of 122 paces per minute. Nevertheless, as a result of the route inspection, the USPS determined that Plaintiff's route was overburdened. Forty-five minutes were added to the street delivery time to make the street time six hours and thirty minutes. The route was assessed at taking nine hours and five minutes to deliver. As a result,

4

Plaintiff received one hour and five minutes of "router assistance" each morning.

During the months of June and July of 1999 Plaintiff worked thirty-seven times and her delivery time was over her route's assessed delivery time on all thirty-seven occasions. On September 24, 1999, Plaintiff was issued a notice of fourteen day suspension. The basis for the suspension was that Plaintiff continued to expand her street time.

If a carrier believes that for some reason he/she will be unable to deliver his/her route in its assessed delivery time he/she may request "auxiliary assistance." If a supervisor approves a request for auxiliary assistance more time is authorized to carry the route. During 1999 and 2000 no other carrier in the Westerly Post Office required as much auxiliary assistance as Plaintiff. Plaintiff requested and received auxiliary assistance on virtually a daily basis. No other carrier required daily auxiliary assistance.

The Postmaster, on a daily basis, compared each city carrier's delivery time with his/her demonstrated performance. The Westerly Post Office's twenty-three city carriers other than Plaintiff consistently delivered their routes in accordance with their demonstrated levels of performance. Typically, during 1999 and 2000, for the city carriers other than Plaintiff, if a mail carrier's delivery time varied, it corresponded with the volume of mail to be delivered on that day. The amount of time Plaintiff required to deliver her route did not vary in accordance with the volume of mail to be delivered.

On July 27, 2000, the USPS issued Plaintiff a notice of removal charging her with failing to satisfactorily perform the duties of her position by continuing to expand her authorized street time. The basis for Plaintiff's termination was her disciplinary record and the fact that on sixteen dates between June 19 and July 14, 2000, Plaintiff used an additional forty-five minutes to two

5

hours to deliver her route. Effective August 26, 2000, the USPS terminated Plaintiff's employment.

Plaintiff filed equal employment opportunity (EEO) complaints during her tenure at the USPS. On August 28, 2003, the Equal Employment Opportunity Commission (EEOC) issued a final decision finding that Plaintiff failed to prove unlawful discrimination. Subsequently, Plaintiff filed this civil complaint.

## IV.  Discussion

As noted above, Plaintiff filed her complaint pro se. The complaint is bare bones. It is difficult to ascertain precisely what facts are alleged to support what claims. Plaintiff engaged counsel after the complaint was filed, however, counsel made no effort to amend the complaint in order to clarify Plaintiff's allegations or claims. Ordinarily, courts afford pro se plaintiffs latitude, however, Plaintiff is now represented by counsel. Even giving the complaint a generous reading it appears that Plaintiff is alleging gender discrimination and retaliation for filing EEO complaints. Defendant's motion for summary judgment addresses both Plaintiff's claims of discrimination based upon gender and retaliation for her EEO activity.

### A. Retaliation

In the memorandum supporting the motion for summary judgment, Defendant specifically addressed the numerous retaliation allegations that it appears Plaintiff raised in her EEOC matter. Defendant noted how each claim was legally flawed and why summary judgment was appropriate: (1) because Plaintiff did not suffer an adverse employment action, (2) because Plaintiff could not show how she was treated differently than any other employee, or (3) because the USPS provided legitimate nonretaliatory reasons for its actions. Plaintiff's complaint,

6

however, does not allege the specific instances of retaliation noted in Defendant's memorandum supporting the motion for summary judgment. Plaintiff's complaint broadly avers that "[a]t all relevant times" she complained about "retaliation" for filing EEO complaints. She alleges that with each "assertion of discipline" she "perceived" a pattern of retaliation.

In her papers in opposition to summary judgment Plaintiff does not address any retaliation claim. "[A]n issue raised in the complaint but ignored at summary judgment may be deemed waived." Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667, 678 (1st Cir. 1995). At oral argument Plaintiff's counsel conceded that no argument in opposition to Defendant's position on the retaliation claims had been advanced in Plaintiff's papers.

> The law is this circuit is crystalline: a litigant's failure to explicitly raise an issue before the district court forecloses that party from raising the issue for the first time on appeal. . . . This rule applies with equal force to situations where a plaintiff properly raises an issue in his complaint, but then fails to adequately address it as part of his summary judgment argument.

Rocafort v. IBM Corporation, 334 F.3d 115, 121 (1st Cir. 2003) (citation omitted).

Accordingly, this court finds that Plaintiff's failure to address her retaliation claims in her summary judgment papers operates as a waiver of any retaliation claim included in her complaint. Defendant's motion for summary judgment on Plaintiff's retaliation claims is granted.

### B. Gender Discrimination

In her complaint Plaintiff alleges that "[a]t all relevant times" she "complained about harassment on the basis of my sex. . . ." She avers that "no other employee in the Westerly Post Office, male or female, was subject to the standard of demonstrated performance as I was." She further alleges that she was deprived of an economic benefit because she "stood up to the male

7

power structure of the USPS." Her complaint alleges that the USPS used her route inspection to establish a false standard that it relied on to terminate her.

Before the court begins its analysis it must point to the difficulty it has in identifying Plaintiff's allegations contained in her complaint. The court reads Plaintiff's complaint as alleging that the USPS subjected to her to impermissible discrimination based upon her gender. Plaintiff's claim is one of disparate treatment. Her complaint alleges that the paces per minute that was assigned to her was impermissibly based upon gender. She avers that the paces per minute standard assigned to her led to disciplinary infractions and ultimately lead to her termination.

Defendant notes that during her deposition Plaintiff admitted that her removal was based upon retaliation for her prior equal employment activity and was not a result of gender discrimination. However, at oral argument, counsel for Plaintiff argued that the adverse action that was taken as a result of the alleged gender discrimination was Plaintiff's termination. This rather significant inconsistency, however, does not impact the court's analysis, because even if an adverse action occurred, the record reflects that the manner in which the USPS assigned the paces per minute was not impermissibly based upon gender.

A Title VII gender discrimination disparate treatment claim may be proven with direct or circumstantial evidence. See generally Kosereis v. Rhode Island, 331 F.3d 207 (1st Cir. 2003). Since Plaintiff has not submitted direct evidence of discrimination, this court is guided by the familiar burden shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Kosereis, 331 F.3d at 212. According to McDonnell Douglas, a plaintiff must first show a prima facie case of discrimination. Id. Generally, in order to establish a prima facie case

8

in a disparate treatment case, a plaintiff must demonstrate that (1) she belongs to a protected

class, (2) she was qualified for the job, (3) she suffered adverse employment action, and (4) the

position remained open or was filled by an individual with similar qualifications. Kosereis, 331

F.3d at 212-213.[1]  The prima facie case is a "small showing" and is not an "onerous" task. Id. at

213 (internal quotation and citations omitted).  If a plaintiff succeeds in establishing a prima facie

case, an inference of discrimination arises and the burden shifts to the defendant to produce

evidence indicating that the employment action was taken for legitimate, nondiscriminatory

reasons. Id. at 212.  If defendant carries this burden, the inference of discrimination disappears

and plaintiff must show that defendant's proffered reason is pretextual, or a coverup for

discrimination. Id.  At the third step in the burden shifting analysis, "the plaintiff's burden of

producing evidence to rebut the employer's stated reason for its employment action merges with

the ultimate burden of persuading the court that she has been the victim of intentional

discrimination." Feliciano De La Cruz v. El Conquistador Resort and Country Club, 218 F.3d 1,

6 (1st Cir. 2000) (internal quotation and citation omitted).

      The court proceeds directly to the second and third level of the McDonnel

Douglas analysis.  Defendant has produced undisputed evidence that Plaintiff was terminated

because of her disciplinary record and because Plaintiff consistently failed to complete her route

in its assigned time.  Defendant has also produced undisputed evidence that the paces per minute

assigned to Plaintiff was based upon *her* demonstrated ability as a result of direct observation of

---

[1]Defendant argued, in its memorandum and at oral argument, that in order to establish a prima facie case, Plaintiff must demonstrate that a similarly situated individual outside of the protected class was treated more favorably.  In the First Circuit, at the prima facie stage in a disparate treatment case, Plaintiff is not required to demonstrate she was treated differently than a similarly situated employee.  The "time to consider comparative evidence in a disparate treatment case is at the third step of the burden-shifting ritual. . . ." Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003) (citation omitted); see also Harlow v. Potter, 353 F. Supp. 2d 109 (D. Me. 2005).

9

*her* by her supervisors.  The record reflects that a mail carrier was assigned a paces per minute based upon individual observations and their own demonstrated ability.  Consequently, the paces per minute standard was gender neutral because it was based upon each employee's ability, a legitimate nondiscriminatory basis.

At oral argument and in her papers, Plaintiff argued that the paces per minute standard was impermissibly based upon gender but proffered no facts to support that allegation.  Plaintiff now faces the impact of her failure to comply with Rule 12.1.  Rule 12.1 provides an important structural framework for the summary judgment process.  Harvey v. Snow, 281 F. Supp. 2d 376 (D.R.I. 2003).  Plaintiff, as the nonmoving party, "may not rest upon . . . mere allegations or denials" but "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Although the court reviews the facts in the light most favorable to Plaintiff, the court does not consider conclusory allegations, improbable inferences, or unsupported speculation.  Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002).  Beyond her bare conclusory allegation that the paces per minute standard was impermissibly based upon gender, Plaintiff has presented no fact to rebut Defendant's position that the paces per minute standard was based upon an employee's demonstrated ability, a gender neutral factor.[2]  The record does

---

[2]In her memorandum in opposition to summary judgment, and at oral argument, Plaintiff argued that another male employee in the Westerly Post Office was assigned a different paces per minute than she had been assigned.  In support of this argument Plaintiff attached what appears to be notes from the male employee's route inspection as an exhibit to her opposition memorandum.  The notes are not properly before this court for two reasons.  Plaintiff failed to file a Rule 12.1 statement and thus the facts supporting Plaintiff's argument are not part of the summary judgment record.  Additionally, "[d]ocuments supporting or opposing summary judgment must be properly authenticated."  Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000).  "To be properly admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of rule 56(e)."  Id. (internal quotation and citation omitted).  Plaintiff did not file an authenticating affidavit for the notes from the male employee's route inspection.  Rather, she simply appended a purported copy of the notes, unsworn and uncertified, to her opposition memorandum.  This court may not give any credence to the notes in assessing the motion for summary judgment.  Id.  The court notes, however, that the uncontroverted record reflects that as a result of the male employee's route inspection his delivery time was reduced by approximately

10

not reflect that the manner in which the route inspection was conducted was impermissibly based upon gender. The record fails to reflect any fact that would suggest pre-text on behalf of the USPS or unlawful discrimination. Plaintiff has failed to point to any fact that would suggest that she was terminated for a reason other than those proffered by Defendant: her disciplinary record and the fact that she consistently failed to complete her route in its assigned time. Viewing the facts in the light most favorable to Plaintiff, Plaintiff has not raised a genuine issue of fact as to whether the paces per minute standard assigned to her, the manner in which the route inspection was conducted, and ultimately, her termination, was motivated by gender discrimination. <u>See generally</u> Fed R. Civ. P. 56(e). Defendant has sustained the moving party's burden of demonstrating that there are no genuine issues of material fact. Consequently, Defendant must be granted judgment as a matter of law.

V. Conclusion

For the above reasons, the motion of Defendant, John E. Potter, for entry of summary judgment is GRANTED.

SO ORDERED

Mary M. Lisi
United States District Judge
November  *28*  , 2005

_____

twenty-nine minutes. Consequently, the record before the court reflects that Plaintiff was treated more favorably than the male employee as time was added to her route as a result of the route inspection.